# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN KOLODZINSKI,

                Plaintiff,

v.

PENTAGON FEDERAL CREDIT UNION,

                Defendant.

Case No. 17-CV-1768-JPS

**ORDER**

## 1.    INTRODUCTION

Plaintiff filed this action on December 19, 2017. He alleges that Defendant discriminated against him for exercising his right to dispute debts, in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. (Docket #1). Specifically, Plaintiff alleges that he applied for a home equity loan with Defendant and was informed he would have to resolve five disputes on his credit report before his application would be considered. After removing the disputes as directed, his credit score dropped below the minimum threshold required by Defendant for loan approval, thus resulting in denial.

Defendant moved to dismiss the complaint, and that motion is now fully briefed. (Motion, Docket #10; Brief in Support, Docket #11; Response, Docket #12; Reply, Docket #14). For the reasons explained below, Defendant's motion must be granted.

## 2.    STANDARD OF REVIEW

Defendant has moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). FRCP 12(b)(6) provides

for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). In reviewing Plaintiff's complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [Plaintiff's] favor[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480-81 (7th Cir. 2016) (citation omitted).

To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak*, 810 F.3d at 480 (quotation omitted). Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016).

3. **RELEVANT FACTS**

Accepting the truth of Plaintiff's well-pleaded allegations and drawing all reasonable inferences in his favor, the relevant facts are as follows. In August 2017, Plaintiff applied for a home equity loan with Defendant. As part of the application process, Plaintiff was required to authorize Defendant to obtain and review his credit report. Upon that review, Defendant noticed that Plaintiff had five disputed accounts on his credit report. Plaintiff alleges that the disputes were made in good faith and stemmed from misconduct on the part of his creditors, not himself.

On August 18, 2017, Defendant informed Plaintiff that his application was suspended because of the presence of the disputed

accounts. Defendant told him that he must remove all of the disputes in order to allow his application to move forward. On August 29, 2017, Defendant reiterated to Plaintiff that the disputes would need to be removed, and a new credit report generated, before his loan application could considered further.

In early September 2017, Plaintiff completed the process of having the disputes removed from his credit report. On September 22, 2017, Defendant informed Plaintiff that it had obtained his revised credit report. However, with the disputes removed from the five accounts, Plaintiff's credit score dropped below the minimum threshold necessary to qualify for the desired loan. As a result, Defendant denied Plaintiff's loan application.

4. ANALYSIS

Plaintiff alleges a single claim pursuant to the ECOA. (Docket #1 at 3). The statute provides that a creditor cannot discriminate against an applicant "because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a)(3). "[T]his chapter" refers to Chapter 41 of Title 15, entitled the Consumer Credit Protection Act ("CCPA"). Contained within Chapter 41 are, *inter alia,* the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

Plaintiff maintains that the disputes on his credit report were an exercise of his right under the FDCPA to require creditors to note disputes on accounts when reporting debts to a credit bureau. (Docket #1 at 3-4); *see* 15 U.S.C. § 1692e(8). In his response brief, Plaintiff points to the FCRA as an additional source of his right to force disputed accounts to be listed as such. (Docket #12 at 9); 15 U.S.C. § 1681s-2(a)(3). Plaintiff argues that by requiring him to remove his disputes from his credit report before considering his

application, and ultimately denying it, Defendant violated Section 1691(a)(3). (Docket #1 at 3-4).

The provisions within the FDCPA and FCRA to which Plaintiff cites do not confer on him a "right" to dispute debts; they ensure that Plaintiff's disputed debts are accurately reported as such. In other words, the FDCPA and FCRA impose on creditors and reporting agencies duties to properly investigate and report debts and confer on consumers a right to sue for noncompliance. Plaintiff has not alleged that he sued his creditors or a reporting agency for noncompliance. Therefore, because Plaintiff has not alleged that he exercised a right under the CCPA, his claim that Defendant discriminated against him for exercising such a right must fail.[1]

---

[1] As a threshold matter, the Court must identify what precisely is the adverse credit action that Defendant took against Plaintiff. *See Molina v. Aurora Loan Servs., LLC*, 635 Fed. App'x 618, 624 (11th Cir. 2015) ("To be liable under the ECOA, a creditor must take an 'adverse action' against the plaintiff.").

Plaintiff suggests at different points in his brief that it might be either (1) refusing to consider his loan application without a dispute-free credit report, or (2) declining to extend him a loan. This is a matter of consequence because if the alleged misconduct is refusing to extend a loan, the Defendant's reason for doing so is a nonculpable one—Plaintiff's credit score was too low—and Plaintiff's ECOA claim fails from the start. On the other hand, if the alleged misconduct is refusing to even consider Plaintiff's loan application, the Court must go on to determine if Defendant's reason for doing so is a prohibited one.

Section 1691(a)(3) makes it unlawful for "any creditor to discriminate against any applicant, *with respect to any aspect of a credit transaction . . .*" based on the applicant's good faith exercise of a right under the CCPA. 15 U.S.C. § 1691(a)(3). This plain text suggests that consideration of a loan application would fall within the statute's parameters. But the legislative history of the statute indicates that Section 1691(a)(3) was "intended to bar retaliatory *credit denials or terminations* against applicants who exercise their rights under any part of the [CCPA]." S. Rep. No. 94–589, 94 Cong., 2nd Sess. (1977), *reprinted in* 1976 U.S.C.C.A.N. 403, 407 (emphasis added). Further, the Act defines "adverse action" (a term used in another subsection of the Act but logically related to the discrimination provision) as "*a denial or revocation of credit*, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the

### 4.1 Plaintiff Did Not Exercise a Right Under the FDCPA

Plaintiff argues that by disputing five of his debts, and requiring that they be noted as disputed on his credit report, he exercised a right granted to him by the FDCPA or, alternatively, the FCRA. The Court turns first to the FDCPA.

The specific section of the FDCPA on which Plaintiff relies, Section 1692e(8), prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Plaintiff characterizes this provision of the FDCPA to confer upon him, a consumer, a right to dispute accounts in good faith on his credit report. But the text and purpose of the statute suggest otherwise.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." *Id.* § 1692(e). Congress identified a variety of abusive collection practices that were contributing "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy" and found that the existing laws and procedures for redressing injuries caused by a debt collector's abusive practices were inadequate to protect consumers. *Id.* § 1692(a)–(b). To help ensure that consumers are "treated in a reasonable and civil manner," *see* S. Rep. No. 95–382, 95 Cong., 1st Sess. 3 (1977), *reprinted in* 1977 U.S.C.C.A.N.

---

amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6) (emphasis added).

Regardless, for present purposes, the Court will assume that a retaliation claim under the ECOA can be alleged based on a lender's refusal to consider a loan application.

1695, 1697, the FDCPA prohibits a debt collector from using "false, deceptive, or misleading representation or means in connection with the collection of any debt" as well as "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. §§ 1692e, 1692f.

The FDCPA creates a private right of action for consumers who receive communications that violate the Act so that they may recover for damages incurred as a result of the debt collector's misconduct. *See* 15 U.S.C. § 1692k. The FDCPA "in essence 'enlists the efforts of sophisticated consumers . . . as private attorneys general to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.'" *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008)) (internal punctuation marks omitted).

In other words, the FDCPA makes unlawful certain debt collection practices and confers on consumers a private right of action *to remedy violations of the statute.* In the context of this case, this means that the FDCPA confers upon Plaintiff a right to sue a debt collector who fails to communicate that his disputed debt is in fact disputed. Plaintiff, of course, does not allege that he sued a debt collector for failure to report a dispute and that Defendant discriminated against him because he filed that suit. To the contrary, Plaintiff alleges that the credit reporting agencies accurately reported disputes on five of his accounts.

The cases Plaintiff cites are not to the contrary. For example, in *Owens,* the defendant agreed to extend credit to the plaintiff only after she agreed to abandon or settle her Truth in Lending Act ("TILA") claims in a

pending lawsuit that had arisen from a previous credit transaction with the defendant. *Owens v. Magee Fin. Serv. of Bogalusa, Inc.*, 476 F. Supp. 758, 768 (E.D. La. 1979). The TILA is a consumer protection statute within the CCPA that seeks to "avoid the uninformed use of credit" through the "meaningful disclosure of credit terms," thereby enabling consumers to become informed about the cost of credit. 15 U.S.C. § 1601(a). In addition to imposing criminal liability, the TILA creates a private right of action for actual and statutory damages for certain disclosure violations. 15 U.S.C. § 1640(a). Unlike in this case, the plaintiff in *Owens* exercised her statutory right to pursue civil liability for the defendant's violations of a statute encompassed with the CCPA—and suffered an adverse credit action because of it.

Similarly, the plaintiff in *Pettineo* was permitted to proceed on his ECOA claim based on his allegations that the defendant creditor denied him credit because he had previously sued the defendant under various portions of the CCPA. *Pettineo v. GE Money Bank*, No. CIV.A. 10-2569, 2011 WL 1163308, at *3–4 (E.D. Pa. Mar. 30, 2011). The court made the unsurprising finding that pursuit of a private right of action available under a provision within the CCPA qualifies as "exercis[ing] any right under [the CCPA]." 15 U.S.C. § 1691(a)(3). *Pettineo* is distinguishable, then, for the same reason *Owen* is: there is no allegation in this case that Plaintiff exercised his right under the FDCPA to sue for violations of the Act and that his litigation was the basis for Defendant's alleged discrimination.

Of course, the FDCPA does contain another provision—which neither party cites—that allows a consumer to notify a debt collector that he disputes a debt and require the collector to verify the existence of the debt before making further efforts to collect it. 15 U.S.C. § 1692g(a), (b); *see*

*also DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010). This provision is also of no help to Plaintiff, however, as it has nothing to do with how disputed accounts appear on his credit report, which is the alleged basis for Defendant's discrimination.

For these reasons, Plaintiff has not alleged that he exercised a "right" under the FDCPA. *See Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1336 (11th Cir. 2000).

### 4.2 Plaintiff Did Not Exercise a Right Under the FCRA

Plaintiff also argues that he exercised a right under the FCRA by disputing accounts on his credit report. The subsection of the FCRA that Plaintiff claims confers on him an affirmative right reads as follows:

(3) Duty to provide notice of dispute

> If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(3). This subsection describes, as its name states, a duty; it does not confer on Plaintiff a right. A different section of the Act does create a private right of action for consumers against violators. *Id.* §§ 1681o (negligent violations), 1681n (willful violations). However, Plaintiff has not alleged that any person or consumer reporting agency failed to properly provide notice of a dispute in violation of Section 1681s-2(3), or that he exercised his right under the FCRA to seek a remedy for such a violation.

As with the FDCPA, there is a provision within the FCRA that prescribes a procedure that must be followed (in this instance by the reporting agency) when a consumer provides notification of a dispute. 15

U.S.C. § 1681i. A consumer's dispute is a precondition to the triggering of a duty; it is not an affirmative right conferred by the statute.

### 4.3 Purpose of the Statute

The reasons explained above are sufficient to compel dismissal of Plaintiff's claim. Additionally, the Court further finds that Plaintiff's theory of recovery under the ECOA is inconsistent with Regulation B, issued by the Consumer Financial Protection Bureau ("CFPB"), which describes the purpose of the ECOA and further explains its provisions. 12 C.F.R. § 1002.1; *see also* 15 U.S.C. § 1691b(a) (granting the CFPB authority to promulgate regulations "to carry out the [ECOA's] purposes"). Specifically, Regulation B discusses a creditor's use of credit history when evaluating a credit application, *see* 12 C.F.R. § 1002.6, and the comments to the Regulation state that:

> A creditor may restrict the types of credit history and credit references that it will consider, provided that the restrictions are applied to all credit applicants without regard to sex, marital status, or any other prohibited basis. On the applicant's request, however, a creditor must consider credit information not reported through a credit bureau when the information relates to the same types of credit references and history that the creditor would consider if reported through a credit bureau.

12 C.F.R. § Pt. 1002, Supp. I, cmt. to Paragraph 6(b)(6) (Types of credit references).

Plaintiff points out that Regulation B prohibits creditors from restricting their consideration of credit history based on a "prohibited basis," and argues that Defendant is therefore prohibited from refusing to consider reports with disputes. But Plaintiff misinterprets the text of the Regulation. Defendant has chosen to restrict the type of credit history it will

consider to dispute-free reports, and that restriction is applied to *all* credit applicants. Plaintiff does not allege that this restriction is applied in a non-uniform way, and Defendant confirms in its briefing that this restriction is applied to every credit applicant.

## 5. CONCLUSION

For the reasons stated herein, Plaintiff has failed to state a claim on which relief can be granted. His complaint must, therefore, be dismissed. Because any amendment on Plaintiff's part would be futile, and because Plaintiff has not request leave to amend, the dismissal will be with prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (granting leave to amend is not necessary where it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted); *see also James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006) (rejecting plaintiff's argument that district court erred in dismissing complaint with prejudice where plaintiff did not request leave to amend).

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Docket #10) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of August, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge